**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

OMARION QUELIK JOHNSON,

Plaintiff,

v.

DIRECTOR WALT PESTERFIELD,
C.O. OWOEYE,
LT. ROSE, and
SGT. CARTER,

Defendants.

Civil Action No.: BAH-25-1457

## MEMORANDUM OPINION

In response to the above-entitled civil rights complaint, Defendants Walt Pesterfield, Lt. Rose, and Sgt. Carter, filed a motion to dismiss. ECF 13. Although counsel also entered his appearance on behalf of Defendant Officer Owoeye, *see* ECF 8, no response to the complaint has been filed on Owoeye's behalf. Notice was sent to Plaintiff Omarion Quelik Johnson by the Clerk of Court notifying him that a motion to dismiss had been filed, that he had the right to file an opposition to the motion, and explaining of the consequences of failing to do so. ECF 15. That notice was returned to the Court as undeliverable with the notation that Johnson had been released. ECF 16. All litigants are obliged to keep a current address on file with the Court, but Johnson has not done so. *See* D. Md. Local R. 102.1.b.iii (D. Md. 2025). For the reasons explained below, the motion filed on behalf of Defendants Pesterfield, Rose, and Carter will be granted. Further, the complaint as to Defendant Owoeye will be dismissed based on Johnson's failure to update his address.

## I. BACKGROUND

On April 9, 2025, Johnson was incarcerated at Baltimore County Detention Center ("BCDC"). He claims that on Unit 4E at approximately 4:46 p.m., a "Code 2," indicating a fight, was called over the radio and officers were locking inmates into their cells. ECF 1-1, at 1. Johnson was walking up the stairs when he was trying to explain to a sergeant that the incident had taken place in front of his cell and his door had been locked because of it; this was the reason he could not "lock in" to his cell like the rest of the inmates on the unit. *Id.* The sergeant told Officer Owoeye to escort Johnson off of the unit and to take him to lock-up. *Id.* Johnson claims he was being "pushed off the unit" by three to four officers who were placing him in handcuffs. *Id.* At that time, Lt. Rose issued an order for Johnson to be "taken to the ground." *Id.* When the officers lifted Johnson and began to drag him, his shoe came off. *Id.* Lt. Rose allowed Johnson to put his shoe back on. *Id.*

When the officers reached the elevators with Johnson, he was still attempting to tell them why he could not lock in when he was "slammed again on [his] face by C.O. Owoeye." ECF 1-1, at 2. Johnson claimed that Owoeye was laughing as he "kneed" Johnson's head down so that Johnson's tooth penetrated his lips, causing blood to pour out as he was laying on the ground. *Id.* Johnson states that he blacked out briefly while he was on the ground. *Id.* When he was lifted from the ground, Johnson recalls "dripping blood over the floor and elevator." *Id.* Johnson claims that a sergeant told Owoeye to get Johnson a "bag" to stop the bleeding and Owoeye initially refused. *Id.* When Owoeye later agreed to get something to stop the bleeding in Johnson's lip, Owoeye claimed Johnson spit on him when the sergeant asked Owoeye what happened. *Id.*

Johnson was taken to be seen by medical staff where he was told he needed to go to the hospital for stitches. ECF 1-1, at 2. He claims he was placed in a waiting cell where he waited

for hours to be taken to the hospital "dripping blood the whole time" and he was "not given any water to wash [his] mouth out." *Id.* Johnson later received a ticket charging him with a disciplinary violation, stating that he spit on Owoeye and pulled away from him during the escort; it also charged that Johnson had refused to lock in. *Id.* Johnson denies all of the charges. *Id.*

Johnson asserts that Sgt. Carter is liable for Owoeye's conduct because she was the shift supervisor on the day of the incident and even after she reviewed the video footage from the unit, which Johnson maintains supports his version of events, she still signed off on a "fabricated report." ECF 1-1, at 2. He additionally claims that since Lt. Rose was the highest-ranking officer on the scene at BCDC on unit 4E, and witnessed what was going on but still allowed Johnson to be assaulted twice, he is liable. *Id.* at 3. With respect to Pesterfield, Johnson claims he is responsible because he is the director of BCDC and in that role is responsible for staffing as a whole. *Id.* He claims that there is a pattern at BCDC for staff to disregard local policy and best practices; he claims this demonstrates systemic failures. *Id.*

## II. STANDARD OF REVIEW

In reviewing the complaint on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the Court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. ANALYSIS

### A. Supervisory Liability

In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a

supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Pesterfield's only involvement in the incident described by Johnson is Pesterfield's position as Warden. A blanket statement that there is a regular disregard for rules of conduct by employees is not enough to establish that he has authorized unconstitutional or unlawful conduct or that he knew about this particular incident. The basis Johnson describes for Pesterfield's liability is one of respondeat superior which is not available in §1983 litigation. *See Wright*, 766 F.2d at 850. The complaint will be dismissed as to Pesterfield.

Sgt. Carter's culpability is based on Johnson's disagreement with Carter's assessment of the credibility of Johnson's explanation regarding why he did not "lock in" to his cell when all other inmates on the unit had done so. Carter's assignment of Johnson to disciplinary segregation and issuance of a notice of infraction, as alleged, does not amount to a constitutional violation. *See Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (recognizing the "general legal proposition that a false disciplinary charge cannot serve as the basis for a constitutional claim"). Further, Johnson does not name the sergeant who was present when Owoeye allegedly dropped him on his face when they got to the elevators. ECF 1-1, at 2. Thus, the supervisory theory of liability for Sgt. Carter is unsupported by the allegations in the complaint and will be dismissed as to Carter.

Johnson asserts that Lt. Rose is liable because he was the highest-ranking officer on the scene and "allowed" Johnson to be assaulted by Owoeye. ECF 1-1, at 3. However, the only facts asserted in the complaint are that Lt. Rose ordered Owoeye to take Johnson to the ground because there was some apparent difficulty in handcuffing Johnson, an order that Johnson does not appear to contest beyond the fact that it set events in motion that ultimately resulted in his alleged assault by Owoeye. *See* ECF 1, at 2. After Lt. Rose ordered Johnson taken to the ground (and allowed him to put his shoe back on), there is no further mention of Lt. Rose's alleged involvement in the matter or any claim that Lt. Rose gave any direction to Owoeye or was present when Johnson was injured by Owoeye. The lone fact that Lt. Rose was the highest-ranking officer on duty at the time of the alleged assault by Owoeye is not, standing alone, a basis for finding him liable for Owoeye's alleged conduct in assaulting Johnson. The complaint as to Lt. Rose will be dismissed.

**B. Local Rule 102.1.b.iii**

In the alternative, Johnson has failed to update his address or to participate in the litigation. As noted, it appears that Johnson is no longer incarcerated and has failed to contact the Court with his new address. When Johnson filed his complaint with the Court, he was advised that he was required to "keep a current mailing address on file with the Clerk's Office." *See* ECF 3, at 1. Because he has not done so, the claim alleging excessive use of force by Officer Owoeye will be dismissed without prejudice. The Court notes that this basis of dismissal would also apply in equal measure to Defendants Lt. Rose, Sgt. Carter, and Warden Pesterfield and thus provides an alternative basis for dismissal of the claims against them.

## IV. CONCLUSION

By separate order which follows, the motion to dismiss filed on behalf of Defendants Pesterfield, Carter and Rose is granted and the claims against Defendant Owoeye are separately dismissed due to Plaintiff's failure to provide an updated address.

8/27/2026
Date

/s/
Brendan A. Hurson
United States District Judge